603 P.2d 91

**MISSION BANK, a corporation, Appellant,**

v.

**John T. KUTKO and Barbara Gail Kutko, husband and wife, Appellees.**

**No. 14453.**

Supreme Court of Arizona, In Banc.

Nov. 16, 1979.

Steven L. Wasserman, Phoenix, for appellant.

Mangum, Wall, Stoops & Warden by Gerald W. Nabours, Flagstaff, for appellees.

CAMERON, Chief Justice.

This is an appeal by Mission Bank from a verdict and judgment in favor of John and Barbara Kutko in an action for the balance due under an installment contract to purchase a mobile home. We have jurisdiction pursuant to Rule 19(e), Rules of Civil Appellate Procedure, 17A A.R.S.

We must answer the following questions on appeal:

1. Did the court rule correctly as a matter of law that the Kutkos were entitled to credit for eight payments made from the account of the guarantor of the debt?

2. Did the court err in awarding the Kutkos attorney's fees?

The facts necessary for a disposition of this matter on appeal are as follows. On 30 June 1972, John T. and Barbara G. Kutko (the Kutkos) purchased a mobile home from Flag Trailer Sales of Flagstaff, Arizona. The purchase price was $6,180. The addition of 13% interest over the 10 year payment period, as well as other charges, left a time deferred balance in excess of $11,000 to be paid in 120 monthly payments of $93.78. Flag Trailer Sales sold the contract without recourse to Mobile Discount Corporation (Mobile) who resold the contract with recourse to Mission Bank. Mobile and Mission Bank had an agreement whereby a small percentage of each payment on this and other accounts was placed in reserve to be available in case of default in payments. The money was kept by Mission Bank but belonged to Mobile.

The Kutkos made payments until 20 May 1975 when the mobile home was destroyed by a windstorm. Kutkos discontinued their payments and filed a claim with their insurance company, Mobile Insurance Company. On 16 June 1975, the Kutkos received a check for $5,600 which was close to the amount owed on the contract less the unearned interest, but did not cover the loss of the contents of the trailer. The Kutkos held the check, while they were negotiating the question of coverage of the trailer's contents, until 30 August 1975 when they sent the check to Mission Bank. During that time, Mobile Insurance Company had gone into receivership, and when the bank tendered the check for payment it was returned because of insufficient funds.

In September of 1975, the Kutkos were four months delinquent in their payments and Mobile authorized payment from the reserve account. The bank did not transfer the funds at that time, but waited until January of 1976, four months later, when it transferred eight payments from the Mobile

account and credited the amount to the Kutkos' debt.

On 3 March 1976, the bank received a second check in the amount of $5,600 payable to the Kutkos, Mobile, and Mission Bank. The bank returned the unendorsed check to Mobile Insurance Company on 1 April 1976 asking it be exchanged for a cashier's check. The insurance company notified the bank that it required endorsements from all three parties and returned the check to the bank on 9 April 1976. The bank then circulated the check to the parties and on 14 June 1976 credited the check to the Kutkos' account. In the meantime, the bank, on 8 March (five days after they had received the second check), brought suit against the Kutkos alleging an unspecified amount as due and owing. The testimony at trial indicated that with the transfer of the eight payments, if the check had been negotiated as late as April, there would have been no balance due the bank by the Kutkos.

After suit but before trial, the bank transferred the amount of four payments back into the Mobile account.[1] When these facts came out at trial, the court heard arguments regarding the effect of this transfer. The bank claimed the Kutkos owed the bank at least four payments plus interest, while the Kutkos claimed the transfer from Mobile's account of the eight payments had extinguished their debt as to the bank. The judge sustained the Kutkos' position holding, as a matter of law, that they were entitled to credits for all eight payments, and that the balance due after the $5,600 draft was paid was only $58.13. Since this amount actually represented one month's interest payment, the court held the bank might have avoided this charge had it acted more promptly in obtaining endorsements on the second check. Over the bank's objection the court submitted to the jury only the issue of the bank's due diligence in processing the check. From this ruling and from the court's award of

$2,000 attorney's fees to the Kutkos, Mission Bank appeals.

## COULD THE BANK TRANSFER BACK THE FOUR PAYMENTS TAKEN FROM MOBILE'S ACCOUNT?

The court held, as a matter of law, that all eight payments transferred from Mobile's account to the Kutkos' account should be credited to payment of the Kutkos' debt. The bank claims that the transfer back to Mobile of the amount of four payments revived that portion of the debt owed by the Kutkos to the bank. We disagree.

The bank had a legal right pursuant to agreement between it and Mobile to transfer the money from Mobile's account to the Kutkos' account. Once this was done, the bank could not, by a transfer of part of the funds back to Mobile's account, reestablish the obligation in that amount. See 60 Am. Jur.2d, Payment, § 67, p. 657; *Braun v. Cox*, 202 Iowa 1244, 211 N.W. 891 (1927).

This does not mean that the Kutkos are relieved of the responsibility of paying the amount of the eight payments which Mobile, in effect, has advanced. Mobile, by subrogation, may demand payment from the Kutkos of this amount. The Comment to the Restatement of the Law, Contracts, § 120(2) states:

"Comment: If the payment or satisfaction is by a surety or co-surety, he may not only have a right of indemnity or of contribution, but if he fully performs may by subrogation enforce the joint duty against the other joint contractors. This right, however, is that of surety, and the person originally entitled to performance cannot * * * maintain an action."

And the United States Supreme Court has stated:

"Under the doctrine of subrogation, payment by the guarantor * * * is treated not as creating a new debt and extin-

---

1. It should be noted that during this time Mobile brought suit in Coconino County against the Kutkos for the amount they owed Mobile. This suit was dismissed because of a question of venue. It was after this suit was dismissed and the suit by Mission Bank against the Kutkos commenced that the amount of the four payments was transferred back to Mobile.

guishing the original debt, but as preserving the original debt and merely substituting the guarantor for the creditor." *Putnam v. Commissioner,* 352 U.S. 82, 88–89, 77 S.Ct. 175, 178, 1 L.Ed.2d 144, 148 (1956).

The Kutkos may still owe the amount due, but not to the bank. The bank has been satisfied and discharged. Restatement, supra. We find no error in the court's finding of law and the instructions on this point.

### DID THE COURT ERR IN AWARDING THE KUTKOS ATTORNEY'S FEES?

 The trial court granted defendants Kutkos $2,000 in attorney's fees pursuant to A.R.S. § 12–341.01 which was effective in September of 1976.[2] This case was filed on 8 March 1976 prior to the effective date of the statute. We have recently held that the statute is not applicable to cases filed prior to the effective date of the statute. *Bouldin v. Turek,* 125 Ariz. 77, 607 P.2d 954 (1979).

The trial court's award of $2,000 as and for attorney's fees is reversed. The Kutkos' claim for attorneys' fees on appeal is denied. (*Bouldin,* supra.) Judgment affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.

---

**2.** The effective date of the statute, as stated in the statute, was 1 September 1976. Because the statute did not include a duly enacted emer-gency clause, its effective date may have been 23 September 1976. This is not relevant to the disposition of this case, however.